# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

CARVER THOMAS ASKEW,

        **Plaintiff,**

vs.                             **Case No. 4:13cv566-WS/CAS**

SERGEANT ERIK CROSBY,
SERGEANT DONNIE SEGREE,
SERGEANT KENNETH MALPHURS,
and CAPTAIN ROLLIN AUSTIN,

        **Defendants.**

_____/

## REPORT AND RECOMMENDATION

After the close of extended discovery periods, *see* ECF Nos. 165, 196, 208, and 212, Defendants Crosby, Malphurs, and Segree filed an amended summary judgment motion, ECF No. 217, and Defendant Austin filed a separate summary judgment motion, ECF No. 218. The pro se Plaintiff was advised of his obligation to respond to the motion, ECF No. 220, and his response was filed on March 15, 2017. ECF No. 221. Plaintiff's response was entitled "Cross * Motion." ECF No. 221. However, Plaintiff requests that Defendants' motions be denied. *Id.* at 1. Thus,

Plaintiff's "motion" was construed as Plaintiff's opposition to Defendants' motions for summary judgment. *See* ECF No. 225.

## Allegations of the Fourth Amendment Complaint

Mr. Askew alleged that on September 13, 2012, while he was incarcerated at Franklin Correctional Institution, he was wrongfully subjected to the use of chemical agents although he was not creating a disturbance. ECF No. 97. He said that Sergeant Crosby was having a conversation with him at his cell door around 9:00 p.m. when all of a sudden, Crosby announced that Mr. Askew had called him a name and called for security over his radio. *Id.* at 6. He alleged that Sergeant Crosby returned to his cell with Captain Austin, who questioned him about disrespecting Sergeant Crosby. *Id.* Mr. Askew "explained his side of the story" and the officers left. *Id.*

A short time later, Sergeant Crosby returned to his cell door, laughing. *Id.* at 7. At first, Mr. Askew thought Sergeant Crosby had just been joking around, but then he told Mr. Askew: "You're on borrowed time." *Id.* Sergeant Crosby told him that had "pissed the wrong people off with [his] writ writing" and he would "gas your ass." *Id.*

At 9:21 p.m., Captain Austin and Sergeant Malphurs came to Mr. Askew's cell door.  *Id.* at 7.  Captain Austin opened the "food flap" on the door, "enticing" Mr. Askew to "kneel down engaging him into conversation."  *Id.*  "In mid sentence," Captain Austin suddenly moved aside and Sergeant Malphurs sprayed him directly in the face with chemical agents.  *Id.*  Mr. Askew "could hear multiple voices laughing."  *Id.*

Approximately ten minutes later, Captain Austin was heard laughing, and directed Mr. Askew to come to the door to "cuff up."  *Id.* at 8.  When Mr. Askew was approaching the door, chemical agents were once again administered through the "food flap" of his cell door.  *Id.*  Again, Mr. Askew hear "the previous voices burst out into loud [laughter] again."  *Id.*

Mr. Askew alleged that he was not removed from his contaminated cell for nearly 45 minutes.  *Id.* at 8.  He was permitted to shower and given another set of clothing which he contends also "heavily reaked [sic] of chemical agents."  *Id.*

Mr. Askew also alleged that Sergeant Segree responded to Sergeant Crosby's "falsified security call" of a disturbance.  *Id.* at 9.  He contends that Sergeant Segree "failed and/or refused to perform his duty to protect the Plaintiff from the other officers" by not intervening to stop the

"unprovoked" and "excessive use of force" which occurred in Sergeant

Segree's presence." *Id.*

Mr. Askew asserts Eighth Amendment claims against all four

Defendants and seeks compensatory and punitive damages as relief. *Id.*

at 10. He claims that he "did not" violate any rules and was never given a

disciplinary report for any infraction. *Id.* at 12. He also alleged that he did

not pose a threat to himself or others and the use of chemical agents was a

malicious and sadistic act, done only for the purpose of causing him harm."

*Id.* at 12-13.

**Legal standards governing a motion for summary judgment**

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The

"party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[1] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 325, 106 S. Ct. at 2554; <u>Beard v. Banks</u>, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>

---

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), <em>cert. denied</em> 522 U.S. 1126 (1998) (quoting <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere

existence of some factual dispute will not defeat summary judgment unless

that factual dispute is material to an issue affecting the outcome of the

case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th

Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir.

2000)).

 "[A]t the summary judgment stage the judge's function is not himself

to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202

(1986).  "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party."

Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of

evidence" is not enough to refer the matter to a jury).  The Court must

decide "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L.

Ed. 2d 202 (1986)).  All "justifiable inferences" must be resolved in the light

most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct.

at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[2] but "only if there is a

'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557

U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where

the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec.

Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted). On

the other hand, "[i]f reasonable minds could differ as to the import of the

evidence, . . . a verdict should not be directed." Wilkerson v. McCarthy,

336 U.S. 53, 62, 69 S.Ct. 413, 417, 93 L.Ed. 497 (1949) (cited in Anderson,

477 U.S. at 250-51, 106 S. Ct. at 2511.

---

[2] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

**The Rule 56(e) Evidence**

Mr. Askew submitted an affidavit[3] in opposition to the summary judgment motions providing his version of the events which transpired on September 13, 2012. ECF No. 223. He declares that Sergeant Crosby "orchestrated" an incident, reporting falsely to Captain Austin that he had called him a derogatory name (which need not be repeated here), and claiming Mr. Askew had disobeyed an order to stop creating a disturbance. *Id.* at 1. Mr. Askew states that this was done solely for the "purpose of intentionally inflicting harm" to him. *Id.*

He said that at approximately 8:30 p.m., he was sitting "passively" in his cell and was not creating a disturbance. ECF No. 221 at 2. He says that Sergeant Crosby came with Captain Austin to his cell and he "respectfully explained his version of the events" to them. *Id.* at 3. However, Captain Austin disregarded what he said, without any investigation. *Id.*

---

[3] Mr. Askew submitted his affidavit twice. ECF Nos. 223, 224. Within that affidavit, he also certificates that the facts presented in his fourth amended complaint, ECF No. 97, and his "cross motion," ECF No. 221 (deemed to be his response to Defendants' summary judgment motions) are "true and correct." ECF No. 223 at 2. It is not necessary to repeat those asserted facts here.

Mr. Askew declares that Captain Austin ordered Sergeant Malphurs to administer chemical agents while Sergeants Crosby and Segree "stood less than (3) feet away observing and laughing in unison with Defendants Austin & Malphurs . . . failing to protect" him from the unlawful use of force. ECF No. 223 at 1-2. Mr. Askew points out that he was never issued any disciplinary reports in relation to the use of force, but was falsely accused of creating a disturbance. *Id.* at 2. He says that he was twice sprayed with chemical agents, and denies that Captain Austin came to his cell to "order him to stop his behavior" before the chemical agents were administered the second time. *Id.* at 2-3.

Mr. Askew also disputes the time of the events, stating that the second spraying of chemical agents did not happen at 11:07 p.m., but at 10:07 p.m.[4] ECF No. 223 at 3. He also states that Captain Austin was "laughing as he stood there ignoring" his requests for help. *Id.* He says that Captain Austin ordered him to "cuff up," but when he approached the cell door, the second application of chemical agents were sprayed on him

---

[4] To the degree there is a dispute over the specific time of the events, that dispute is not relevant. The ultimate issue is whether the use of chemical agents was justified. There is no dispute between the parties that chemical agents were used on Mr. Askew twice on September 13, 2012.

through the food flap. *Id.* He states that, once again, laughter erupted from the Defendants. *Id.*

Mr. Askew further declares that Captain Austin ordered him to "wrap it up" when he was taking a shower after the use of force. *Id.* at 3. He also issued Mr. Askew another set of clothing which smelled heavily of chemical agents. *Id.* Again, Mr. Askew indicates that Captain Austin rushed him through the decontamination process.[5] *Id.*

He maintains that if Captain Austin had "performed his duties" and conducted an investigation, he would have "discovered that the Plaintiff was not creating a disturbance and/or influencing other inmates to do so." *Id.* at 3-4. He specifically states that he did not disobey an order to stop creating a disturbance. *Id.* at 4. He also declares that Captain Austin never personally witnessed him violate any rule or regulation warranting the punishment imposed. *Id.* Furthermore, he states that he never received a disciplinary report, had a disciplinary hearing, or was "placed on 'strip status'" which he contends suggests that he "did not do anything to precipitate the use of pepper spray." ECF No. 221 at 11.

---

[5] The complaint does not assert a claim for the denial of medical care or preventing Mr. Askew from showering after the use of force. ECF No. 97.

Defendants have provided a different version of events. Defendants' evidence reveals that at approximately 10:45 p.m.[6] on September 13, 2012, Mr. Askew was "yelling obscenities at staff" and "refusing to cease the disturbance that he was creating." ECF No. 217-4 at 6 (ECF No. 217, Ex. D).[7] Sergeant Crosby attempted to counsel with Mr. Askew, but he "refused to comply." *Id.*; *see also* at 24. Captain Austin also attempted to counsel with Mr. Askew and ordered him to cease his behavior. *Id.* at 6-7. At first, Mr. Askew complied with those orders, but later in the evening, he "again began to create a disturbance in the unit by yelling obscenities at staff through his cell door and refusing all orders to cease his behavior." *Id.* at 7. Sergeant Crosby informed Captain Austin that Mr. Askew was "again engaging in disorderly behavior including yelling, cursin, and banging on his cell door." ECF No. 218-8 at 3 (ECF No. 218, Ex. 8).

Captain Austin had Sergeant Malphurs "report to A-Dorm due to a disorderly inmate." ECF No. 217-4 at 6 (Ex. D). Sergeant Malphurs

---

[6] It is noted that the times stated throughout Exhibit D are inconsistent. ECF No. 217-4. Mr. Askew has drawn attention to those differences; nevertheless, that dispute is not material to the issue of whether or not the force used was excessive.

[7] Because Mr. Askew is pro se and does not have access to the Court's electronic docket (ECF), references provided are to both the electronic version of the document as filed on the docket, followed by the relevant page number. The hard copy of the exhibit is referenced thereafter in parenthesis.

approached Mr. Askew's cell with Captain Austin and ordered Mr. Askew to

"cease his disturbance." *Id.* at 7. Mr. Askew refused to comply, and

Captain Austin ordered Sergeant Malphurs to administer chemical agents,

which he did at approximately 11:00 p.m.[8] *Id.* Sergeant Malphurs

dispensed three, one-second bursts of chemical agents, striking Mr. Askew

"in the upper torso," but Mr. Askew still did not stop his behavior. *Id.*

Approximately six minutes later, Captain Austin approached Mr. Askew's

cell again and once more ordered him to cease his disorderly actions. *Id.*

When Mr. Askew refused, Sergeant Malphurs administered three additional

one-second bursts of chemical agents at approximately 11:07 p.m. *Id.* Mr.

Askew became compliant and all force ceased at that point. *Id.* Sergeant

Malphurs stated that "[o]nly the minimal amount of force necessary was

used." *Id.*

Defendants' evidence also includes part of the "Incident Report"

which stated that Mr. Askew would "be receiving a DR for 2-3: Creating a

minor disturbance." *Id.* at 17. At another part of that Exhibit (a report from

---

[8] Times of the use of force are provided based on the camera times as shown on the fixed wing video evidence. *See* ECF No. 207. Even if the events happened an hour earlier as claimed by Mr. Askew, ECF No. 223 at 3, it is not disputed that the use of force occurred.

the Office of the Inspector General), it states that Mr. Askew "received a DR for 2-3: creating a minor disturbance." *Id.* at 4. However, no disciplinary report was provided and, indeed, Mr. Askew declared that no report was issued. *See* ECF No. 223 at 2.

Captain Austin provided an affidavit stating that prior to the use of force, he ordered Mr. Askew "to cease his disruptive behavior, and he complied with that order and no chemical agents were used." ECF No. 218-8 at 2 (Ex. 8). Mr. Askew was advised "that if he resumed his disruptive behavior - chemical agents would be used on him without any prior warning." *Id.* Captain Austin declares that Sergeant Crosby informed him approximately an hour and a half later that Mr. Askew "was again engaging in disorderly behavior including yelling, cursing, and banging on his cell door." *Id.* He states that at approximately 11:00 p.m., Mr. Askew was sprayed with chemical agents. *Id.* at 3. He further declares that only he and Sergeant Malphurs were at the cell when chemical agents were deployed, *id.* at 3, and neither of them were laughing. ECF No. 218-8 at 4. Further, Captain Austin declares that Sergeant Segree "came to A Dorm approximately 10 minutes after [Mr.] Askew was sprayed but he had no

involvement in the application of chemical agents on [Mr.] Askew on September 13, 2012." *Id.* at 5.

A Declaration was submitted by Sergeant Segree which states that he "had no involvement in a September 13, 2012 use of force on" Mr. Askew. ECF No. 221 at 91 (Plaintiff's Ex. T). He states that he has "no memory of even being in the area where" the use of force occurred. *Id.*

**Analysis**

**1. Exhaustion**

Defendants Segree and Malphurs contend that Mr. Askew failed to exhaust administrative remedies with regards to the claims bought against them. ECF No. 217 at 13-20. Their motion for summary judgment notes that Mr. Askew filed grievances about the fact that Sergeant Crosby falsified an incident which resulted in an unlawful use of force against him. *Id.* at 17. However, it is argued that Mr. Askew "never complains about, nor even mentions either Defendants Segree or Malphurs in his Grievances." *Id.* at 18.

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones v. Bock, 549 U.S.

199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that

failure to exhaust is an affirmative defense under the PLRA, and that

inmates are not required to specially plead or demonstrate exhaustion in

their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437,

2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule,"

the burdens of production and persuasion are given to the same party)).

Defendants did not provide copies of the relevant grievances to support

this argument.  It could be rejected on that basis alone.  However, review of

the record reveals that Mr. Askew previously submitted the grievances with

his third amended complaint, ECF No. 22 at 13-20.  Those have been

reviewed.

In the informal grievance, Mr. Askew claimed that he was retaliated

against for writing grievances on Sept 13, 2012.  *Id.* at 13.  He said that

Sergeant Crosby falsified "an incident to his supervisor with intent to inflict

the use of physical corporal punishment" on him as an act of reprisal.  *Id.* at

13-14.  He said that he had not violated any rule or regulation to warrant

the use of force.  *Id.* at 14.  That informal grievance was "returned"

because the allegations were being reviewed by the Inspector General's

Office.  *Id.* at 13.  Mr. Askew continued with the grievance process and filed

a formal grievance to the warden, *Id.* at 15-17, which was denied.  Mr.

Askew then filed an appeal to the Secretary's office, ECF No. 22 at 18-19,

which was also denied.  *Id.* at 20.

The Prison Litigation Reform Act requires inmates to exhaust

available administrative remedies prior to filing a civil rights complaint

under § 1983.  42 U.S.C. § 1997e(a).  Exhaustion is mandatory, <u>Alexander</u>

<u>v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998); and "applies to all

inmate suits about prison life, whether they involve general circumstances

or particular episodes, and whether they allege excessive force or some

other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d

12 (2002).  Yet an inmate is only required to exhaust administrative

remedies that are "available."  <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1855, 195 L.

Ed. 2d 117 (2016) (underscoring the PLRA's "built-in exception to the

exhaustion requirement: A prisoner need not exhaust remedies if they are

not 'available.'").  "Requiring exhaustion allows prison officials an

opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court."  <u>Jones v. Bock</u>, 549 U.S.

199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).[9]  Importantly,

the Supreme Court has rejected the argument raised by Defendants

Malphurs and Segree.

The Court has consistently directed courts to review the requirements

of the prison's grievance process as those are the steps a prisoner must

take to properly exhaust administrative remedies.  Jones, 549 U.S. at 218,

127 S. Ct. at 922 (citing Woodford, 548 U.S. at 88, 126 S.Ct. 2378) (stating

that "[t]he level of detail necessary in a grievance to comply with the

grievance procedures will vary from system to system and claim to claim,

but it is the prison's requirements, and not the PLRA, that define the

boundaries of proper exhaustion.").  No rule or regulation has been cited by

the Defendants for the proposition that a prisoner must name every person

involved in an incident about which he desires to grieve.  Indeed, the

history of this case reveals why that is so: Mr. Askew did not know with

certainty which persons were involved in the events at issue in this case.

*See* ECF Nos. 59, 62, 70, 79, and 89.  That does not seem to be unusual.

---

[9] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

However, by raising the issue in his grievances, prison officials had the ability to investigate the events surrounding his grievance. Prison officials, thus, had the opportunity to learn the identities of the persons involved. Furthermore, the Court explicitly rejected the argument raised by the Defendants here when it rejected the view of the Sixth Circuit Court of Appeals, concluding that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (holding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."). The argument presented in the motion for summary judgment concerning exhaustion should be rejected.[10]

## 2. Merits of the Eighth Amendment Claim

The Eighth Amendment forbids cruel and unusual punishment. Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003). A claim that prison officials used unnecessary and excessive physical force on a prisoner falls within the Cruel and Unusual Punishments Clause. The core judicial

---

[10] Notably, Defendants previously asserted the affirmative defense of exhaustion. ECF No. 57. They subsequently withdrew the defense. ECF No. 61. Discovery was initially provided to clarify the persons involved. *See* ECF No. 62. Despite renewing the defense in the summary judgment motion, ECF No. 217, it is not supported.

inquiry for this claim is the standard set forth in <u>Whitley v. Albers</u>, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986): "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) (quoting <u>Whitley</u>, at 320-21, 106 S.Ct. at 1085).

Not long ago the Supreme Court reiterated that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."  <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 34, 130 S. Ct. 1175, 1176, 175 L. Ed. 2d 995 (2010) (quoting <u>Hudson</u>).  In doing so, the Court explicitly "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim."  <u>Wilkins</u>, 559 U.S. at 37, 130 S. Ct. at 1178.  The Court has recognized that "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary

quantity of injury." <u>Wilkins</u>, 559 U.S. at 37, 130 S. Ct. at 1178 (quoting

<u>Hudson</u>, 503 U.S. at 9, 112 S.Ct. 995).

Captain Austin requests summary judgment be granted in his favor

because force was required to restore discipline. ECF No. 218 at 7-10.

Sergeant Malphurs seeks qualified immunity on the basis that there was no

constitutional violation and the order from Captain Austin to use chemical

agents on Mr. Askew was "legally justified under the circumstances." *Id.* at

21. Additionally, Sergeants Crosby and Segree seek summary judgment

on the basis that they were not involved in the use of force were not "even

at the location during the use of force." ECF No. 217 at 9.

There is a dispute between the parties as to whether the force used

was lawful (to restore order) or malicious. Defendants have provided

evidence which shows that Mr. Askew was creating a disturbance over an

extended period of time and did not stop when ordered to do so. Thus,

according to Defendants, the use of force was justified, not excessive, and

not unlawful.

Mr. Askew, however, provided contrary evidence showing that he did

not disobey any order to stop creating a disturbance. He has shown that

no use of force was reasonable because he was sitting "passively" in his

cell and was not creating a disturbance. He provided evidence in support of his claim that Sergeant Crosby knew he was not creating a disturbance, but falsely set him up in retaliation for filing grievances. Sergeant Crosby then reported false events to Captain Austin for the purpose of having chemical agents used against him. Mr. Askew's declaration that Captain Austin never personally witnessed him violate any rule or regulation which would warrant the "punishment" imposed supports the inference that Captain Austin unlawfully directed Sergeant Malphurs to administer chemical agents. If Captain Austin did not see him creating a disturbance, then the inference to be given is that Sergeant Malphurs did not either. Additionally, according to Mr. Askew, he was pleading for help before the second use of force and, thus, not creating a disturbance. Viewed in the light most favorable to Mr. Askew, he has demonstrated a genuine dispute of material fact which precludes granting summary judgment as to those three Defendants. There is a dispute between the parties as to whether the force used was lawful (to restore order) or malicious, and that dispute should be resolved by a jury trial. Accordingly, the motion for summary judgment filed by Captain Austin, ECF No. 218, and the summary judgment

motion filed by Sergeant Crosby and Sergeant Malphurs, ECF No. 217, should be denied.

## III.  Sergeant Segree

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  Anderson, 477 U.S. at 255, 106 S. Ct. at 2513.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  477 U.S. at 255, 106 S. Ct. at 2513-14.  A plaintiff's version of the facts should be adopted even in qualified immunity cases.  Scott, 550 U.S. at 378, 127 S. Ct. at 1775.  Mr. Askew's version of the facts puts Sergeant Segree near Captain Austin when force was used. Mr. Askew's version of facts is that Sergeant Segree stood nearly 30 feet away and laughed when chemical agents were wrongfully administered. However, there is contrary evidence as Captain Austin's affidavit declares that Sergeant Segree was not present and, moreover, there was no laughing.

First, even if it were true that Sergeant Segree were laughing at a use of force, it was be unprofessional and unethical, but not necessarily

unconstitutional.  Accepting Mr. Askew's version of events, Sergeant

Segree, a "subordinate" of Captain Austin, stood by and laughed.  ECF No.

223 at 4.  There is no evidence, however, that Sergeant Segree knew

Mr. Askew had not been creating a disturbance and, thus, no basis to

conclude that he was in a position to protect Mr. Askew and simply failed to

intervene as alleged.  *See* ECF No. 97 at 9.

Moreover, this case is similar to Scott v. Harris, 550 U.S. 372, 127 S.

Ct. 1769, 167 L. Ed. 2d 686 (2007).  "There is, however, an added wrinkle

in this case: existence in the record of a videotape capturing the events in

question."  Scott, 550 U.S. at 378, 127 S. Ct. at 1775.  "The videotape quite

clearly contradicts the version of the story told by" Mr. Askew.  550 U.S. at

378, 127 S. Ct. at 1775.  In this case, the fixed wing video[11] shows two, and

only two, persons present at Mr. Askew's cell when the chemical agents

were used.  Sergeant Segree was not present.  "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so

that no reasonable jury could believe it, a court should not adopt that

---

[11] The fixed wing video does not demonstrate whether or not Mr. Askew was creating a disturbance.  ECF No. 207.  It does not show what was happening in Mr. Askew's cell and there is no audio with that video.  A hand-held video was also submitted and, while that video has audio, it does not record events surrounding the use of force.  Instead, it shows Mr. Askew being taken afterwards to a shower.

version of the facts for purposes of ruling on a motion for summary judgment."  550 U.S. at 380, 127 S. Ct. at 1776.  Mr. Askew's version of events is discredited by the video as it relates to Sergeant Segree such that no reasonable jury could believe him.  550 U.S. at 380-81, 127 S. Ct. at 1776.  Accordingly, summary judgment should be granted in favor of Sergeant Segree.

## 4.    Qualified immunity

Sergeants Crosby and Malphurs raise qualified immunity as a defense.  ECF No. 217.  "Qualified immunity shields government officials sued in their individual capacities from liability against a plaintiff's § 1983 claims if the officials' conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoted in McNeeley v. Wilson, 649 F. App'x 717, 720–21 (11th Cir. 2016)).  If a "public official proves 'that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred,'" Grider, 618 F.3d at 1254, n.19 (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)), the next step is to determine: (1) "whether the plaintiff's allegations, if true, establish a constitutional violation"; and (2) "whether the

right violated was 'clearly established.'" <u>Grider</u>, 618 F.3d at 1254 (quoted in

<u>McNeeley</u>, 649 F. App'x at 721). "That right may be established by

'specific statutory or constitutional provisions; principles of law enunciated

in relevant decisions; and factually similar cases already decided by state

and federal courts in the relevant jurisdiction.'"[12] <u>Goebert v. Lee Cty.</u>, 510

F.3d 1312, 1330 (11th Cir. 2007) (quoted in <u>McNeeley</u>, 649 F. App'x at

721).

"As a 'threshold question,' a court must ask, '[t]aken in the light most

favorable to the party asserting the injury, do the facts alleged show the

officer's conduct violated a constitutional right?'" <u>Saucier v. Katz</u>, 533 U.S.

194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) (quoted in <u>Lee v.

Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002). "If a constitutional right

would have been violated under the plaintiff's version of the facts, the court

must then determine 'whether the right was clearly established.'" <u>Lee</u>, 284

F.3d at 1194 (quoting <u>Saucier</u>). Here, Defendants' do not view the facts as

presented by Mr. Askew. *See* ECF No. 217 at 12-13. The Court has.

---

[12] The Defendants' citation to a 2006 case from California, *see* ECF No. 217 at 10-11, is not within the relevant jurisdiction.

"[I]nmate discipline and control is a primary job responsibility for" prison and jail officials and such actions are "well within the scope of their discretionary authority."  McNeeley, 649 F. App'x at 721.  Second, accepting Mr. Askew's allegations as true, he has established a constitutional violation - falsely claiming a disturbance so that chemical agents may be used because an inmate has used the grievance process violates the Eighth Amendment.  Third, the law was clearly established prior to this incident that using chemical agents as a matter of retaliation and not to control a disturbance was unlawful.  Wilkins, 559 U.S. 34, 40, 130 S. Ct. 1175, 1180, 175 L. Ed. 2d 995 (2010) (finding that assault by correctional officer which is "carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline'" states an Eighth Amendment claim); *see also* Whitley v. Albers, 475 U.S. 312, 320-21, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (finding that Eighth Amendment question turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."); Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (same); Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (finding that "[a]mong

'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'"); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737, 122 S. Ct. 2508, 2514, 153 L. Ed. 2d 666 (2002) (concluding that use of hitching post was unconstitutional and violated clearly established law that "a reasonable person would have known"). "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting <u>Whitley v. Albers</u>)). All of these cases provided ample notice prior to September 2012 that using force on an inmate when there is no need to maintain or restore discipline is unconstitutional. Summary judgment should be denied as to this argument because Defendants are not entitled to qualified immunity.

## 5. Physical Injury

All Defendants assert that Mr. Askew's request for compensatory and punitive damages, *see* ECF No. 97 at 10, must be dismissed in light of 42 U.S.C. § 1997e(e) because he did not suffer more than *de minimis* physical injury. ECF No. 217 at 23-27; ECF No. 218 at 16-17. The rule in the Eleventh Circuit is that prisoners who have not suffered more than *de*

*minimis* physical injury cannot recover either compensatory or punitive damages.  <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1199 (11th Cir. 2011); <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007).  "[T]o avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*."  <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1312–13 (11th Cir. 2002). "The meaning of the phrase 'greater than *de minimis*,' however, is far from clear."  <u>Chatham v. Adcock</u>, 334 F. App'x 281, 284 (11th Cir. 2009).  This Court has, however, previously concluded that injuries such as pain from burning eyes and skin, temporary blindness, and difficulty breathing is insufficient to avoid the § 1997e(e) bar. <u>Magwood v. Tucker</u>, No. 3:12cv140-RV/CJK, 2012 WL 5944686, at *5 (N.D. Fla. Nov. 14, 2012); <u>Robinson v. Tifft</u>, No. 3:11cv560-LAC/CJK, 2012 WL 2675467, at *2 (N.D. Fla. June 1, 2012); <u>Kornagay v. Burt</u>, No. 3:09cv281-LAC/EMT, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011); and <u>Beecher v. Jones</u>, No. 3:08cv416-MCR/EMT, 2010 WL 5058555, at *5–6 (N.D. Fla. Oct. 29, 2010).  Mr. Askew's injuries amounted to temporary discomfort and he has not demonstrated more than *de minimis* injury which

would justify an award of punitive or compensatory damages, although nominal damages may still be awarded.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that: (1) the motion for summary judgment filed by Defendant Austin, ECF No. 218, be **DENIED** as there is a genuine dispute of material fact; (2) the motion for summary judgment filed by Defendants Crosby, Malphurs, and Segree, ECF No. 217, be **GRANTED in part** and **DENIED in part**.  The motion should be granted as to Defendant Segree, but otherwise denied as to Defendants Crosby and Malphurs, and Plaintiff's requests for punitive and compensatory damages, ECF No. 97, should be **DISMISSED** pursuant to 42 U.S.C. § 1997e(e). Additionally, this case should be **REMANDED** for further proceedings prior to setting it for trial.

**IN CHAMBERS** at Tallahassee, Florida, on August 31, 2017.

 S/    Charles A. Stampelos                  
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.